IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN DRIGGINS, | ) | CASE NO. 1:14CV919 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN LAZAROFF, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Ryan Driggins ("Petitioner" or "Driggins") brings this habeas corpus action

pursuant to 28 U.S.C. § 2254.  Doc. 1.  Driggins is detained at the Mansfield Correctional

Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury

of two counts each of murder, aggravated robbery, and aggravated burglary, all with firearm

specifications.  Doc. 10-2, p. 41.[1]  *State v. Driggins*, No. CR-07-493626-A (Cuyahoga Cty.

Common Pleas Ct. filed Aug. 21, 2009).  The trial court merged the two counts for each act and

all the gun specifications and sentenced Driggins to fifteen years to life in prison for murder, ten

years to life for both aggravated robbery and aggravated burglary, and three years for the gun

specification, to be served consecutively, for an aggregate prison sentence of 38 years to life.

Doc. 10-2, p. 42.

On April 29, 2014, Driggins filed his Petition for Writ of Habeas Corpus setting forth

nineteen grounds for relief.  Doc. 1, pp. 41-49.  This matter has been referred to the undersigned

Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth

more fully below, a portion of Ground Five is procedurally defaulted; a portion of Ground

---

[1]  Doc. page citations are to ECF Doc. page numbers.

1

Nineteen is not cognizable; and the remainder of Driggins' grounds fail on the merits. Thus, the undersigned recommends that Driggins' Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED in part** and **DENIED in part.**[2]

## I. Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A. State Court Action

#### 1. Underlying facts

The following summary of underlying facts is taken from the Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio:[3]

> {¶ 2} On February 28, 2007, defendant was involved in the shooting of Glenn Rankin during the burglary and robbery of Rankin's house. On March 5, 2007, defendant was arrested and he gave a statement to police admitting to being in a car with the men who commi[t]ed the offenses, but claiming no knowledge of, or involvement in, the crimes.
>
> {¶ 3} On March 6, 2007, defendant told police that he shot Rankin and that his previous statement was a lie.
>
> {¶ 4} On March 7, 2007, defendant called his former high school football coach, Theodore Ginn, Sr., and asked for help with a "situation that went bad." On March 14, 2007, defendant spoke with Ginn face-to-face and made a written statement to police, confessing to robbing Rankin's house and claiming that, when Rankin tried to grab the gun from him, defendant pulled the trigger.

Doc. 10-3, pp. 46-47; *State v. Driggins*, 2012 WL 5552937, at *1 (Oh. Ct. App. Nov. 15, 2012).

#### 2. Procedural history

---

[2] The ground in the petition that is procedurally defaulted results in a dismissal; the grounds in the petition that are addressed on the merits result in a denial.

[3] Driggins has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

On March 15, 2007, a Cuyahoga County Grand Jury indicted Driggins on two counts of aggravated murder, each with a firearm specification, and two felony murder specifications; two counts of aggravated robbery, each with a firearm specification; and two counts of aggravated burglary, each with a firearm specification.  Doc. 10-2, pp. 1-6.  Driggins, through counsel, pleaded not guilty to all counts.  Doc. 10-2, p. 8.

On August 7, 2007, Driggins, per a plea agreement, pleaded guilty to one amended count of murder with a firearm specification and one count of aggravated robbery without the firearm specification; the remaining counts were nolled.  Docs. 10-2, p. 9; 10-4, pp. 7-12.  Under the plea agreement, Driggins agreed to testify as a state witness in any proceeding that might be brought involving potential co-defendants.  Doc. 10-4, pp. 10-11.  The trial court accepted Driggins' guilty plea, and, on August 13, 2007, sentenced him to eighteen years to life in prison.  Doc. 10-2, pp. 9-10.

On June 2, 2008, the state was prepared to try one of Driggins' co-defendants, Dionte Ricks.  Doc. 10-4, p. 48.  Driggins refused to testify at Ricks' trial in violation of his plea agreement.  Doc. 10-4, pp. 48-50.  The state filed a motion to vacate Driggins' guilty plea.  Docs. 10-2, p. 11; 10-4, p. 48.  During a hearing on the motion to vacate, Driggins admitted that he refused to testify at Rick's trial, that he did not comply with that condition of his plea agreement, and that he did not oppose the state's motion to vacate his guilty plea.  Doc. 10-4, pp. 50-52.  The trial court granted the state's motion to vacate, reinstated the original six count indictment, and set the case for trial.  Docs. 10-2, pp. 14-15; 10-4, p. 51.

On July 3, 2008, Driggins, though counsel, filed a motion to exclude any evidence relating to other crimes, wrongs or acts.  Doc. 10-2, p. 16.  On July 8, 2009, the trial court overruled Driggins' motion.  Doc. 10-2, p. 28.

On November 12, 2008, Driggins, through counsel, filed a motion to suppress oral and written statements made to police.  Doc. 10-2, p. 30.  On June 15, 2009, the trial court held a hearing on Driggins' motion to suppress and thereafter denied his motion.  Docs. 10-2, p. 39; 10-4, p. 308.

On August 21, 2009, the jury found Driggins guilty of two lesser included offenses of aggravated murder—murder and felony murder—, two counts of aggravated robbery, two counts of aggravated burglary, and the attendant firearm specifications.  Doc. 10-2, p. 41.  On August 24, 2009, the trial court merged the two counts for each act and all the gun specifications and sentenced Driggins to fifteen years to life in prison for murder, ten years to life for both aggravated robbery and aggravated burglary, and three years for the gun specification, to be served consecutively, for an aggregate prison sentence of 38 years to life.  Doc. 10-2, p. 42.

**B. Direct Appeal**

On September 30, 2009, Driggins, through counsel, appealed to the Ohio Court of Appeals.  Doc. 10-2, p. 44.  On April 7, 2010, the state Court of Appeals *sua sponte* dismissed Driggins' case because he failed to file a brief.  Doc. 10-2, p. 47.  Driggins' counsel filed a motion for reconsideration.  Doc. 10-2, p. 48.  The state Court of Appeals granted his motion and reinstated Driggins' appeal.  Doc. 10-2, p. 51.  On May 3, 2010, Driggins filed a motion to remand his case for a final appealable order per Ohio Revised Code § 2505.02.  Doc. 10-2, p. 52.  On May 17, 2010, the state Court of Appeals *sua sponte* dismissed his appeal in accordance with R.C. § 2505.02.  Doc. 5-2, p. 57.

On January 31, 2012, Driggins, through counsel, filed a motion in the trial court to issue a corrected journal entry of sentencing.  Doc. 10-2, p. 58.   On February 10, 2012, the trial court issued a corrected sentencing entry.  Doc. 10-2, p. 70.

On March 9, 2012, Driggins, through counsel, appealed his February 10, 2012, judgment to the Ohio Court of Appeals.  Doc. 10-2, p. 73.  In his brief, Driggins raised the following assignments of error:

I. Defendant was denied due process of law when the court overruled the motion to suppress as defendant had not knowingly, intelligently and voluntarily waived his _Miranda_ rights.

II. Defendant was denied due process of law when the police employed a private individual to induce defendant to make his statement.

III. Defendant was denied due process of law and his Sixth Amendment right to counsel when he was interviewed by the police after he appeared for a preliminary hearing and had counsel.

IV. Defendant was denied due process of law when the court overruled his motion to suppress resulting from an illegal and unconstitutional arrest.

V. Defendant was denied his constitutional right to public trial when the court closed the courtroom during portions of the testimony.

VI. Defendant was denied a fair trial when the court allowed evidence of other bad acts and failed to give any limiting instruction.

VII. Defendant was denied due process of law when the court allowed evidence of defendant's arrest for an unrelated drug law violation.

VIII. Defendant was denied due process of law when the court failed to give an accomplice instruction with reference to Terrell X. Dillard.

IX. Defendant was denied due process of law when he was sentenced to life imprisonment when all the elements of murder were not included in the jury instructions.

X. Defendant was denied due process of law when the court allowed the defendant to be convicted of murder as a result of an intervening act.

XI. Defendant was denied due process of law when the court failed to include all elements of murder under §2903.02(B) of the Ohio Revised Code.

XII. Defendant was denied due process of law when defendant was allowed to be convicted of an offense for which no culpable mental state was required.

XIII. Defendant was denied due process of law when the court instructed on murder which was not a lesser included offense of aggravated murder.

XIV. Defendant was denied due process of law and his right to present a defense when the court would not instruct on lesser included offenses.

XV. Defendant was denied due process of law when the court overruled his motion for judgment of acquittal.

XVI. Defendant is entitled to a new trial because the verdicts are against the manifest weight of the evidence.

XVII. Defendant was subjected to unconstitutional multiple punishments when the court failed to merge the murder, aggravated robbery and aggravated burglary convictions.

XVIII. Defendant was denied due process of law when the court failed to have the prosecutor elect which offenses to sentence on.

XIX. Defendant was denied his Sixth Amendment rights when he was sentenced to a consecutive sentence based on judicial factfinding.

XX. Defendant was denied due process of law when the court failed to make findings of fact and conclusions of law.

XXI. Defendant was denied due process of law and placed twice in jeopardy when the court vacated his original sentence on motion of the prosecutor.

XXII. Defendant was denied effective assistance of counsel.

Doc. 10-2, pp. 82-85.  On November 15, 2012, the state Court of Appeals affirmed the trial court's judgment.  Doc. 10-3, pp. 44-89; *Driggins*, 2012 WL 5552937.

On November 26, 2012, Driggins, through counsel, filed an application for reconsideration and a motion for en banc consideration.  Doc. 10-3, pp. 90, 96.  The Ohio Court of Appeals denied his motion for reconsideration on December 3, 2012, and his motion for en banc consideration on January 9, 2013.  Doc. 10-3, pp. 98, 99.

**C. Ohio Supreme Court**

On February 4, 2013, Driggins, through counsel, filed an appeal to the Ohio Supreme Court.  Doc. 10-3, p. 101.  In his memorandum in support of jurisdiction, Driggins presented the following propositions of law:

I. A defendant has been denied due process of law where there is no knowing, intelligent and voluntary waiver of *Miranda* rights.

II. A defendant has been denied due process of law when the police employ a private individual to induce an arrested defendant to make his statement.

III. A defendant has been denied due process of law and his Sixth Amendment right to counsel where he was interviewed by the police after he appeared in court for a preliminary hearing and was assigned counsel.

IV. A defendant has been denied due process of law when a statement was obtained from the defendant as a result of an unconstitutional arrest.

V. A defendant has been denied his constitutional right to public trial when the court arbitrarily closes the courtroom during portions of the evidence.

VI. A defendant has been denied a fair trial when the court allows evidence of other bad acts and fails to give any limiting instruction.

VII. A defendant has been denied due process of law when the court allows evidence of an arrest for an unrelated drug law violation for which defendant was not being prosecuted.

VIII. A defendant has been denied due process of law when the court fails to give an accomplice instruction concerning the testimony of an alleged accomplice.

IX. A defendant has been denied due process of law when he is sentenced to life imprisonment where the court fails to inform the jury of all elements of murder.

X. A defendant has been denied due process of law when the court allows a defendant to be convicted of intentional murder as a result of an intervening act of another.

XI. A defendant has been denied due process of law when the court fails to include all elements of murder under §2903.02(B).

XII. A defendant has been denied due process of law when he is allowed to be convicted of an offense for which there was no culpable mental state.

XIII. A defendant has been denied due process of law when the court instructs on murder as a lesser included offense of aggravated murder.

XIV. A defendant has been denied due process of law and his right to present a defense when the court refuses to instruct on lesser included offenses.

XV. A defendant has been denied due process of law when the court overrules a motion for judgment of acquittal and the verdicts are against the manifest weight of the evidence.

XVI. A defendant has been subjected to unconstitutional multiple punishments when the court fails to merge a murder, aggravated robbery and aggravated burglary conviction.

XVII. A defendant has been denied his Sixth Amendment rights where a court sentences defendant to consecutive sentences based on judicial factfinding.

XVIII. A defendant has been denied due process of law and placed twice in jeopardy w[h]ere a court vacates a previous sentence on motion of the prosecutor.

XIX. A defendant has been denied the effective assistance of counsel where through errors and omissions by counsel defendant has been deprived of a fair trial.

Doc. 10-3, pp. 104-106.  On April 24, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  Doc. 10-3, p. 172.

### D. Post-conviction Petition

On July 27, 2012, Driggins, through counsel, filed a petition for post-conviction relief in the state trial court while his direct appeal was pending.  Doc. 10-3, p. 173.  Driggins argued that his trial counsel was ineffective for failing to file a motion to suppress the statement he gave to police on March 14, 2007.  Doc. 10-3, p. 173.  Driggins asserted that he had obtained counsel by March 14, 2007, and that he was improperly questioned by police without counsel's presence. Doc. 10-3, p. 174.  On September 20, 2012, the trial court denied Driggins' petition for post-conviction relief.  Doc. 10-3, p. 383.  On October 14, 2012, Driggins, through counsel, requested that the trial court issue findings of fact and conclusions of law.  Doc. 10-3, p. 384.  The Ohio Court of Appeals held in its November 15, 2012, decision, that the trial court had stated its findings of fact and conclusions of law on the record on June 16, 2009.  *Driggins*, 2012 WL 5552937, at *6; *see also* Doc. 10-4, pp. 305-308 (transcript of trial court's ruling on Driggins' motion to suppress).

### E. Federal Habeas Petition

8

On April 29, 2014, Driggins, *pro se*, filed his Petition for a Writ of Habeas Corpus. Doc.

1. He listed the following grounds for relief:

**Ground One**: Mr. Driggins was Denied Due Process of law when the police employed a private individual to induce an arrested prisoner to make his statement.

**Supporting Facts**: Detective Morgan contacted Ted Ginn Sr., Mr. Driggins high school football coach and used him as an agent in order to get Mr. Driggins to make a confession, that they could not get otherwise. Mr. Ginn followed [D]et. Morgan to the jail in order to speak with Mr. Driggins a meeting Mr. Driggins did not pursue nor ask to be arraigned [sic] because he already had counsel assigned to him. This statement was induced and coerced by threats of the death penalty by Det. Morgan and Mr. Ginn. Also a pursuance of charges on Mr. Ginn.

**Ground Two**: Mr. Driggins has been denied Due Process of law and his Sixth Amendment right to counsel where he was interviewed by the police after he appeared in court for a preliminary hearing and was assigned counsel.

**Supporting Facts**: [O]n [M]arch 8, 2007 Mr. Driggins appeared for a preliminary hearing in the Cleveland municipal court for the formal charge of aggravated murder. At the time he was represented by counsel. This was significant because, on 3/14/07, the police contacted Mr. Driggins and further interrogated him and obtained a statement from him. This was a clear violation of his right to counsel. Mr. Driggins did not contact police nor did he request to be interviewed. The police contacted Mr. Driggins and obtained a statement in violation of his sixth amendment right to counsel.

**Ground Three**: Mr. Driggins has been denied his sixth amendment rights where a court sentences him to consecutive sentences based on judicial factfinding.

**Supporting Facts**: [T]he court sentenced Mr. Driggins to consecutive sentences for aggravated burglary an[d] aggravated robbery in addition to the eighteen (18) years to life sentence for murder. This sentence was based on judicial factfindings that Mr. Driggins had a separate animus as defendant had entered the home in order to commit an aggravated burglary which changed when he encountered the victim (Tr.2824). This was unconstitutional judicial factfinding prohibited b[y] the sixth amendment.

**Ground Four**: Mr. Driggins has been denied the effective assistance of counsel where through errors and omissions by counsel Mr. Driggins has been deprived of a fair trial.

**Supporting Facts**: [T]he evidence presented by the prosecution showed that this was an[] accidental shooting. Thus the court sh[o]uld have so instructed the jury on the issue of accident. In addition counsel was deficient in not filing motion to suppress that the statement as being in violation of Mr. Driggins right to counsel.

9

**Ground Five**: Mr. Driggins was denied his right to due process law and placed twice in jeopardy w[h]ere a court vacates a previous sentence on motion of the prosecutor.

> **Supporting Facts**: [O]n August 13, 2007 defendant was sentenced to fif[]teen (15) years to life on count 1, a ten (10) year concurrent sentence on count 3, and a three (3) year sentence for the firearm specification. The court did not inquire of Mr. Driggins personally whether he understood his plea could be vacated if he did not testify or refused to [] testify. Nor was it clear on the record the names of the suspects Mr. Driggins was supposed to testify against. The record states that Mr. Driggins did not know the alleged co-defendant who prosecutors brought to trial, there was no singed [sic] photo line-up pointing to Dionte Ricks. Thus the vacation of the plea and sentence by a different judge at a later date placed Mr. Driggins twice in jeopardy by his later trial. A plea of guilty did not preclude a defendant who pled guilty from raising a double jeopardy claim.

**Ground Six**: Mr. Driggins has been denied due process of law when there is no knowing, intelligent, and voluntary waiver of Miranda rights.

> **Supporting Facts**: Mr. Driggins had been arrested for a drug law violation this was a clear ruse to question him about a homicide.

**Ground Seven**: Mr. Driggins was denied due process of law when a statement is obtained from the petitioner as a result of an unconstitutional arrest.

> **Supporting Facts**: Detectives Morgan and Sandoval, who were in the area of E. 129th [S]t. and [L]akeview [R]oad when they saw the petitioner; who was unknown to them, walking after leaving a store. (TR.132). Wanting to talk to him, who was a person of interest, stopped him. When asked his name, he said "Mike", (Tr.149) and th[e]n ran off. After crossing Eddy road, he tossed something over a fence. He was captured brought to the police station. Petitioner had committed no offense. Any pursuit resulted from police action, who cannot create or cause probable cause and benefit from that activity.

**Ground Eight**: A petitioner[] has been denied his constitutional right to public trial when the court arbitrarily closes the courtroom during portions of the evidence.

> **Supporting Facts**: After a jury view the prosecutor complained that unknown individuals were harassing or bother[ing] potential state witnesses. (Tr.2032). The prosecutor requested that the unknown individuals be exclude[d] from the courtroom. The court agreed an[d] excluded the public from the courtroom.

**Ground Nine**: Mr. Driggins has been denied a fair trial when the court allows evidence of other bad acts and fails to give any limiting instruction.

> **Supporting Facts**: In opening statements the prosecutor related that, prior to Glenn Rankin's Death on February 28, 2007, there was an unrelated home burglary allegedly involving Mr. Driggins. (Tr.1990-2000). Terrell Dillard related

a prior incident involving a burglary and theft of some $80,000 from a heating vent at a home on another occasion. (Tr.2132-33). As this was not part of the crimes charged, the court was required to give a curative and limiting instruction concerning this evidence.

**Ground Ten**: A petitioner has been denied due process of law when the court allows evidence of an arrest for an unrelated drug law violation for which petitioner was not being prosecuted.

> **Supporting Facts**: Over defense objection the court allowed evidence concerning Mr. Driggins arrest for drugs, (Tr.2391-2404), on March 5, 2007, where it was claimed he dropped drugs while being chased by the police (Tr.2393). Detective Morgan was not interested in the drugs and petitioner was never prosecuted for drugs. (Tr.2392). While the prosecutor claimed the jury needed to know why petitioner was arrested this was totally irrelevant. It was evidence of another unrelated offense and was not admissible.

**Ground Eleven**: A petitioner has been denied due process of law when the court fails to give an accomplice instruction [c]oncerning the testimony of an alleged accomplice.

> **Supporting Facts**: If the court is to accept Mr. Driggins statement as [] truthful evidence it has to believe Terrell Dillard was an[] accomplice. Terrell Dillard was an accomplice involved in this crime who drove Mr. Driggins to Rankin's home. At no point did the court give the mandated accomplice instruction. (Tr.2126-28, 2157). Dillard drove petitioner to Rankin's house twice on February 28, 2007 (Tr.2123, 2128). Dillard claimed he saw Mr. Driggins with a gun when he returned to the car. (Tr.2135). He also saw the gun when he picked up Antonio Hasberry. (Tr.2137). Dillard was not charged, (Tr.2151-52) and will not be charged.(Tr.2171).

**Ground Twelve**: Mr. Driggins was denied due process of law when he is sentenced to life imprisonment where the court fails to inform the jury of all elements of murder.

> **Supporting Facts**: The court instructed on the purported lesser included offense of murder under 2903.03(b) of the Ohio revised code, which instruction did not include all elements of murder. (Tr.2699). Omitted was any culpable mental state of at least "reckless" under 2901.22 of the Ohio revised code. This resulted in a life sentence based on strict criminal liability.

**Ground Thirteen**: A petitioner has been denied due process of law when the court allows a petitioner to be convicted of intentional murder as a result of an intervening act of another.

> **Supporting Facts**: The court, instructing on cause and causation instructed the jury: There may be one or more causes of an event; however, if the defendants act or failure to act was one cause, then the existence of another cause is n[o]t a defense. The defendant is responsible for the natural consequences of the defendants unlawful act or failure to act even though the death of Glenn Rankin

was also caused by an intervening act for example, or failure to act of another person or agency.(Tr.2690). Ohio revised code 2903.2(a), required the state to prove defendant "purposely cause the death of another". Requiring the petitioner to defend against the charge as amended by the court in its instructions to the jury was clearly prejudicial.

**Ground Fourteen**: Mr. Driggins has been denied due process of law when the court fails to include all elements of murder under 2903.02(b).

**Supporting Facts**: [T]he court instructed on what it thought to be the lesser included offense of aggravated murder, [i].e murder under 2903.02(b) of the Ohio revised code. The court did not include all elements of murder and even omitted a culpable mental state. The jury instruction did not even track the statu[t]e which required that the predicate felony be "an offense of violence that is a felony of the first or second degree." Moreover there was no requirement that jury be unanimous as to alternative elements. To convict one of murder, the jury had to find that petitioner was "commiting or attempting" to commit "aggravated robbery and/or aggravated burglary". The jury was not required to agree unanimously on which version of the offense.(Tr.2699).

**Ground Fifteen**: Mr. Driggins was denied due process of law when he is allowed to be convicted of an offense for which there was no culpable mental state.

**Supporting Facts**: Mr. Driggins was convicted of murder under 2903.02(b) of the Ohio revised code which failed to include a culpable mental state. The court stated the only difference between aggravated murder and murder was "the absence or failure to prove the element purposely". (Tr.2699-2700). No culpable mental state was required only that the prosecution prove that Mr. Driggins "caused the death of Glenn Rankin as a proximate result of committing or attempting to commit an offense of violence, to wit, aggravated robbery and/or aggravated burglary". (Tr.2699). The jury instruction failed to give petitioner sufficient constitutional notice.

**Ground Sixteen**: Mr. Driggins has been denied due process of law when the court instructs on murder as a lesser included offense of aggravated murder.

**Supporting Facts**: A lesser included offense on count two the court instructed the jury on murder, purportedly under 2903.02(b) of the Ohio revised code. This form murder was not a lesser includ[ed] offense as the court did not even include all elements of murder. Before you can find the defendant Ryan Driggins guilty of murder(b), you must find that the state has proved beyond a reasonable doubt that on or about the 28th of February of 2007, and in Cuyahoga county, Ohio, the defendant, Ryan Driggins, caused the death of Glenn Rankin as a proximate result of committing or attempting to commit an offense of violence, to wit, aggravated robbery and/or aggravated burglary.(Tr.2699). Thereafter, as an aside the court stated that "the offense of aggravated murder is distinguished from murder by the absence or failure to prove the element purposely". (Tr.2699-2700). This was legally deficient. This was an unconstitutional amendment to the indictment by

including an offense which was not a lesser included offense. Murder 2903.02(b) states

> (B) no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit [a]n offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 or the revised code.

**Ground Seventeen**: A petitioner has been subjected to unconstitutional multiple punishment when the court fails to merge a murder, aggravated robbery and aggravated burglary conviction.

> **Supporting Facts**: The court sentenced Mr. Driggins to eight[een] (18) years to life for the murder conviction and consecutive ten (10) years sentences for aggravated robbery and aggravated burglary. (Tr.2822-24). This failure resulted in defendant receiving unconstitutional multiple punishments in violation of the fifth Amendment and 2941.25 of the Ohio revised code. The prosecutor had argued that aggravated burglary and aggravated robbery were part and parcel of the entry into the home and subsequent death of Glen Rankin. (Tr.2620-25).

**Ground Eighteen**: A petitioner has been denied due process of law and his right to present a defense when the court refuses to instruct on lesser included offenses.

> **Supporting Facts**: Defense counsel requested an instruction on lesser include offenses of involuntary manslaughter and/or negligent homicide. The court refused. (Tr.2606-12).

**Ground Nineteen**: Mr. Driggins has been denied due process of law when the court overrules a motion for judgment of acquittal and the verdicts are against the manifest weight of the evidence.

> **Supporting Facts**: At the close of the evidence defense counsel moved for judgment of acquittal. This was denied on all counts.(Tr.2599). There was insufficient evidence to permit a rational fact finder to return a verdict of Guilty.

Doc. 1, pp. 41-49. On November 4, 2014, Respondent filed a Return of Writ (Doc. 10) and

Driggins filed a Traverse (Doc. 13). Respondent argues that all Driggins' grounds fail on the

merits and that some of his claims are not cognizable. Doc. 10, pp. 22-88.

## II. Law

### A. Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to Driggins' habeas petition because he filed it after

the effective date of the AEDPA.  28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  Under the AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies.  *Id.*

**Procedural Default.**  Procedural default may occur in two ways.  *Id.*  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the

issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review**.  In order to obtain habeas relief under  28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court

may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. at 413*.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

#### A.  Claims Overview

Driggins sets forth nineteen grounds for relief in his petition. Doc. 1, pp. 40-19.

Respondent argues that all Driggins' grounds fail on the merits and that some of his claims are

not cognizable. Doc. 10, pp. 22-88.  For the reasons that follow, the undersigned concludes that a

portion of Ground Five is procedurally defaulted; a portion of Ground Nineteen is not

cognizable; and that the remainder of Driggins' grounds fail on the merits.  For convenience, the

undersigned groups Driggins' claims into three categories: before trial; during trial; and after

trial.  The undersigned primarily considers Driggins' grounds in numerical order except when

clarity and convenience counsel otherwise.

### B.  Before Trial

#### 1.  Ground One fails on the merits

In Ground One, Driggins argues that the police contacted Ted Ginn Sr., his former high

school football coach, and "used him as an agent in order to get Mr. Driggins to make a

confession" in violation of Driggins' due process rights.  Doc. 1, p. 41.  He also argues that the

police and Ginn induced and coerced him into making a statement by threatening him with the

death penalty.  Doc. 1, p. 41.

The following is the Ohio Court of Appeals' relevant factual determination and ruling:

{¶ 12} The following evidence was presented at defendant's suppression hearing:
Cleveland Police Detective Joselito Sandoval and Cuyahoga County Sheriff Detective
John Morgan testified that defendant was a "person of interest" in Rankin's homicide
investigation. On March 5, 2007, the detectives saw defendant walking near East 129th
Street and Lakeview Road, approached him, and asked him his name. Defendant
appeared "shifty-eyed" and nervous, and responded that his name was "Mike," which the
police knew was not true. Defendant then "took off running" and threw a bag of crack-
cocaine over a fence. The police caught up with defendant and arrested him for a drug
offense.

{¶ 13} Det. Sandoval and Det. Morgan read defendant his *Miranda* rights, and defendant
was willing to talk with the police without an attorney. The detectives took defendant to
the homicide unit and "advised him that the narcotics were not our main issue of
speaking with him, but yet it was a murder that occurred." Defendant again waived his

*Miranda* rights, this time in writing. At the top of the waiver form, which was admitted into evidence at the suppression hearing, the subject reads "aggravated murder."

{¶ 14} Defendant made an oral and a written statement to the police, in which he claimed to have been in the car with the people who committed the crime. Defendant told the police that he had no knowledge of what was going to happen and gave the police two names in connection with the murder. After his statement, defendant was booked for violation of a state drug law.

{¶ 15} On March 6, 2007, the police spoke with Antonio Hasberry and Terrell Dillard, who were in the car with defendant and Ricks when Rankin was killed. Both men contradicted defendant's version of the events. At that time, defendant became the main suspect in the homicide. According to Det. Sandoval, later that day defendant told the police that "he needed to confess on this crime because he didn't want anybody else to get in trouble for what he did, that it was all his planning, and he committed the crime."

{¶ 16} [Following Driggins' arrest,] Det. Morgan read defendant his *Miranda* rights, and defendant waived them. Defendant confessed to the robbery and shooting, but told the police that he was not sure if he wanted to put it in writing. According to Det. Sandoval, he and Det. Morgan "advised [defendant] to talk to an attorney or somebody else that * * * he has faith in * * * to advise him what he should do. Because * * * it's a major deal. Which he said he would. And at that point basically we were done * * * with the interview and we had him return to the jail area."

{¶ 17} The next day, March 7, 2007, defendant was given access to a phone and he called Ginn. According to Det. Sandoval, defendant told the police Ginn "was looking into trying to find an attorney for him."

{¶ 18} On March 14, 2007, Det. Morgan went to see Ginn at Glenville High School. Det. Morgan told Ginn that Ginn may be a witness in the case because defendant called him. Ginn requested to speak with defendant. The following colloquy took place during Det. Morgan's testimony:

> Q: Out of this conversation at any time did you request Mr. Ginn to go speak with [defendant]?
>
> A: No, I did not.
>
> Q: Who requested to speak with [defendant]?
>
> A: Mr. Ginn.
>
> Q: And did you at any time ask him to get [defendant] to make a written statement?
>
> A: No.

18

{¶ 19} That same day, Ginn followed Det. Morgan to the homicide office where arrangements had been made for Ginn to speak with defendant. Det. Morgan testified that he spoke with Ginn as they waited for defendant to arrive:

> Q: During that conversation in any way did you suggest or ask Mr. Ginn to do something for you or [the] State of Ohio?

> A: No.

> Q: Did you ever ask him to act as an agent of the State of Ohio?

> A: No.

> Q: Did you ever ask him to force [defendant] to make a statement?

> A: No.

{¶ 20} Ginn and defendant had a private conversation, after which, according to Det. Morgan, defendant was ready to make a written statement. Defendant was again *Mirandized*, and he again waived his rights. Shortly after defendant started talking, Ginn left.

{¶ 21} Ginn testified that he was a "mentor" and "father-figure" to defendant. Defendant called Ginn from jail "after the incident," asking for help with "[t]he situation that went bad." Ginn said to defendant, "I'll talk to you later. We'll see what we can do." According to Ginn, the word "lawyer" or "attorney" did not come up in the conversation.

{¶ 22} Subsequently, Det. Morgan came to Ginn's office and asked Ginn if he had spoken with defendant. Ginn replied, "[Y]es * * * I just need to see what I can do to help." Ginn testified that the police officers did not ask him to elicit a statement or confession from defendant. Ginn further testified as follows:

> Q: Did [at] any time [Det.] Morgan ask you to do something for him?

> A: Not for him.

> Q: Did you want to do something for anybody?

> A: I wanted to do something for [defendant].

> Q: Were you able to speak with [defendant]?

> A: Yes.

{¶ 23} Ginn told Det. Morgan that he wanted to meet with defendant. Ginn went downtown, met with defendant, and told him, "Just tell whatever went down and be done with it. And we'll go from there." According to Ginn, he and defendant "made a decision

to do the statement." Asked if he forced defendant to make a statement, Ginn testified as follows:

> No, I wouldn't say I forced him. I thought we sat down and talked and agreed to what was right in his eyesight, what I feel is right, you know, it was basically whatever the decision did he want to make. Because I just feel he was frustrated and he knew more about it than I did.

> * * * [Defendant] called me because he was tired. He was—he wanted to make it right. That's how I got involved with this statement. * * * He leaned on me to do that. So as a father figure, anybody trying to help your child, you know, he know more about it than I do. The way I got down here was following the lead of [defendant]. And as a father, as a mentor or anything like that, you know, I believe in right.

{¶ 24} During Ginn's cross-examination, the following colloquy took place:

> Q: But what did the detective want you to do about [defendant] being in jail? What did he want you to do? He's in jail. So what?

> A: He didn't want me to do anything.

> Q: Sir, didn't Detective Morgan want you to meet with [defendant] to assist [him] or to convince [him] to make a statement in this case? That's why he met with you; isn't that true?

> A: I'm going to be honest with you. I really don't believe that. You know when he came to me I had talked to [defendant]. And I knew that it was an incident and when Detective Morgan came by I knew why he was there. So I didn't—he didn't ask me to do anything. I probably asked him, what could I do to help * * * [defendant]. And he never really gave me any advice. I probably was the one that was pursuing more than anybody. And I—and I just wanted * * * to help [defendant] out. But I couldn't say that anybody asked me to do anything.

{¶ 25} Ginn testified that he "couldn't sit there and take" listening to defendant's statement, so he left.

{¶ 26} Defendant testified that his March 5, 2007 statement to the police was a lie, which is consistent with the detectives' testimony. However, according to defendant, the police did not give him a *Miranda* warning at his March 5, 2007 arrest. Additionally, on March 6, 2007, he was not read his *Miranda* rights, and he did not give an oral statement to the police admitting anything. He requested a lawyer from the police, and he said, "I don't want to come write no more statements. I want a lawyer. As a matter of fact, I didn't have my phone call." Defendant alleged that he called Ginn the same day and asked Ginn to get him a lawyer. Ginn replied that "he would see what he can do." Additionally, defendant testified that the fact that the police "backed off from the 6th to the 14th" shows that he asked for a lawyer.

{¶ 27} According to defendant, nothing happened on March 7, 2007. Defendant testified that "a couple of days later," he met with Ginn and a detective named "Joe." Defendant refused to testify about the subject of the meeting. Defendant met with Ginn again on March 14, 2007. Defendant testified that the statement he made to the police was not voluntary; rather, he made a statement that day "because I was scared that I was going to get the death penalty if I didn't." Specifically, defendant testified that Ginn "told me that I needed to take the needle out of my arm. His exact words." According to defendant, he would not have made the statement if the detectives and Ginn did not "threaten" him with the death penalty.

*       *       *

{¶ 40} Defendant next argues that Ginn acted on behalf of the authorities and induced defendant to confess to the crimes.

{¶ 41} In *State v. Daily*, 53 Ohio St.3d 88, 91–92, 559 N.E.2d 459 (1990), the Ohio Supreme Court, held the following:

> A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. * * * Thus, coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which *Miranda* was based.

{¶ 42} In the instant case, Ginn and both detectives testified that the authorities did not ask Ginn to do anything related to this case. Defendant called Ginn, and Ginn decided to meet with defendant face-to-face, and they agreed that defendant would make a statement. Because there is no evidence of coercion, defendant's second assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at **2-5, 7.

A suspect's waiver of his Fifth Amendment privilege is valid absent evidence that his or her will was overborne or capacity for self-determination critically impaired due to coercive police conduct. *Colorado v. Spring*, 479 U.S. 564, 573 (1987). "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The Ohio Court of Appeals, therefore, correctly applied Supreme Court precedent when it found that Driggins could

not demonstrate police coercion, a necessary element of his claim, because it found that Ginn did not act on behalf of the police.[4]

In support of his assertion that the police used Ginn as an agent to coerce him into confessing, Driggins contends that Detective Morgan "had his sergeant have Mr. Driggins transported from the Sixth District to the downtown Hom[i]cide Headquarters (where his office was, computer was, and things of that nature) because it was more convenient for him [], not for Driggins or Ginn."  Doc. 13, p. 11.  That the police chose the location of the meeting between Ginn and Driggins, who was in police custody, does not equate to Ginn being used by and on behalf of the police.  As the state Court of Appeals noted, Ginn testified that Driggins initially telephoned him; Detective Morgan "didn't want me to do anything" with regard to meeting with Driggins; and that meeting with Driggins was something that Ginn pursued in an effort to help Driggins.  Moreover, that Ginn and Detective Morgan informed Driggins that he could face the death penalty if convicted does not amount to coercion.  *Thorne v. Moore*, 2009 WL 2421741, at *41 (N.D.Ohio July 31, 2009) (informing the defendant of the legal penalty attached to his crime is not a threat of physical violence that may be considered coercive in obtaining a confession).

Driggins' reliance upon *Spano v. New York*, 360 U.S. 315 (1959), is misplaced.  In *Spano*, a "foreign born" defendant with a history of emotional instability was questioned by fifteen law enforcement individuals for eight hours straight, overnight, despite the suspect's repeated entreaties to have his retained attorney present.  360 U.S. at 322-323.  One of the officers present was a childhood friend of the defendant.  *Id.* at 323.  The other officers instructed the childhood friend to tell the defendant, falsely, that a phone call the defendant had made had gotten him into trouble, that he was in jeopardy of losing his job, and that losing his job would

---

[4]  The state Court of Appeals relied on *State v. Daily*, 559 N.E.2d 459, 462-463 (Ohio 1990), which in turn relied on *Colorado v. Spring*, 479 U.S. 564 (1987), *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Moran v. Burbine*, 475 U.S. 412 (1986).

"be disastrous to his three children, his wife and his unborn child." *Id*. The Supreme Court held that, given the totality of the circumstances, Spano's "will was overborne by official pressure, fatigue and sympathy falsely aroused[.]" *Id*.

None of the factors in *Spano* are present in Driggins' case. Specifically, Ginn was not a police officer, unlike the "childhood friend" in *Spano*, and he did not falsely inform Driggins of anything or act in a concerted effort to overcome his will. Driggins cannot show that the Ohio Court of Appeals' decision was contrary to, or an unreasonable application of, United States Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. at 412-413. Ground One, therefore, is without merit.

### 2. Grounds Two and Six fail on the merits

In Ground Two, Driggins argues that he was denied due process and his Sixth Amendment right to counsel when he was interviewed by the police after he had appeared in court and been assigned counsel. Doc. 1, p. 41. He asserts that, on March 8, 2007, he appeared for a preliminary hearing in Cleveland Municipal Court and was represented by counsel, but that, on March 14, 2007, the police contacted him, interrogated him, and obtained a statement from him. Doc. 1, p. 41.

The Ohio Court of Appeals found, with respect to this claim:

{¶ 43} Defendant's final argument regarding his motion to suppress is that his Sixth Amendment right to counsel was violated when the police interviewed him after judicial proceedings had been initiated. However, according to the record, defendant made statements to the police on March 5 and March 14, 2007, and he was indicted in this case on March 15, 2007. "The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings * * *, and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." *Davis v. U.S.*, 512 U.S. 452, 456, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

{¶ 44} Accordingly, defendant's Sixth Amendment right to counsel was not violated and his third assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *7-8.

Because Driggins was indicted on March 15, 2007 (*see* Doc. 10-2, p. 7), and arraigned and appointed counsel on March 20, 2007, (*see* Doc. 10-2, p. 8), the Ohio Court of Appeals properly applied *Davis* in finding that he had no constitutional right to counsel prior to March 20, 2007, when criminal proceedings were initiated.

In Ground Six, Driggins explains that he was assigned counsel in the drug case initially brought against him and that police unlawfully interviewed him about Rankin's murder without counsel's presence.  Docs. 1, p. 43; 13, pp. 14-16.  He asserts that the statements obtained by police were improper because he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights.  Docs. 1, p. 43; 13, pp. 14-16.

The Ohio Court of Appeals set forth the facts and considered Driggins' argument:

{¶ 26} Defendant testified that his March 5, 2007 statement to the police was a lie, which is consistent with the detectives' testimony. However, according to defendant, the police did not give him a *Miranda* warning at his March 5, 2007 arrest. Additionally, on March 6, 2007, he was not read his *Miranda* rights, and he did not give an oral statement to the police admitting anything. He requested a lawyer from the police, and he said, "I don't want to come write no more statements. I want a lawyer. As a matter of fact, I didn't have my phone call." Defendant alleged that he called Ginn the same day and asked Ginn to get him a lawyer. Ginn replied that "he would see what he can do." Additionally, defendant testified that the fact that the police "backed off from the 6th to the 14th" shows that he asked for a lawyer.

{¶ 27} According to defendant, nothing happened on March 7, 2007. Defendant testified that "a couple of days later," he met with Ginn and a detective named "Joe." Defendant refused to testify about the subject of the meeting. Defendant met with Ginn again on March 14, 2007. Defendant testified that the statement he made to the police was not voluntary; rather, he made a statement that day "because I was scared that I was going to get the death penalty if I didn't." Specifically, defendant testified that Ginn "told me that I needed to take the needle out of my arm. His exact words." According to defendant, he would not have made the statement if the detectives and Ginn did not "threaten" him with the death penalty.

{¶ 28} Defendant further testified that, although he initial[]ed the *Miranda* warning section of his March 14, 2007 written statement, Det. Morgan never read him his rights and defendant never waived them. According to defendant, he did not "bother reading" the written statement before signing it, and it is not true.

*       *       *

{¶ 37} Defendant next argues that "[t]he continued interrogation of defendant, after telling defendant about obtaining counsel, violated defendant's Fifth Amendment constitutional right." In *State v. Henricksen*, 8th Dist. No. 51496, 1987 Ohio App. LEXIS 7160, 1987 WL 6803 (Feb. 19, 1987), this court held the following:

> *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 requires that prior to a custodial interrogation, the accused must be apprised of his or her right against self-incrimination and right to counsel. Any statements made by the accused must be the result of a voluntary, knowing, and intelligent waiver of the right to remain silent. *Miranda*, *supra*. A waiver of such rights may be inferred from the totality of the circumstances. *North Carolina v. Butler* (1979), 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286.

{¶ 38} When a suspect invokes his or her *Miranda* right to counsel, police interrogation must stop. The request for counsel must be unambiguous.

> As we have observed, "a statement either is such an assertion of the right to counsel or it is not." * * * Although a suspect need not "speak with the discrimination of an Oxford don," * * * he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, [the law] does not require that the officers stop questioning the suspect.

*Davis v. U.S.*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

{¶ 39} In the instant case, the court found that defendant waived his *Miranda* rights multiple times. This is supported by two written *Miranda* waivers, memorialized as part of defendant's March 5 and March 14, 2007 written statements, as well as Det. Sandoval's and Det. Morgan's testimony. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Because we are to accept the trial court's factual findings if they are supported by competent, credible evidence in the record, defendant's first assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *5-7.

Driggins' apparent argument that his assigned counsel in his drug case should have been present when police questioned him about Rankin's death is without merit. *See Texas v. Cobb, 532 U.S. 162, 168, 173-174 (2001)* (the Sixth Amendment right to counsel is offense specific and covers only acts that would be considered the same offense; thus, a defendant charged with

burglary and appointed counsel was not entitled to that counsel when police later questioned him about the disappearances and possible murder of two of the residents of the burglarized home).

Driggins next argues that, per Detective Morgan's testimony, he told the detective that "Mr. Ginn was going to get [me] an attorney."  Doc. 13, p. 15 (citing Doc. 10-4, p. 192 (transcript of suppression hearing)).  Detective Morgan continued, "And at that point, I remember writing this in my report, that on that day that we were going to take that, as he was exercising his right, he never asked for an attorney."  Doc. 104, p. 192.  Driggins does not dispute that he never asked for an attorney.  Instead, the record shows that, at most, he told Detective Morgan that Ginn was going to get him an attorney.  An ambiguous reference to a hypothetical attorney, such as Driggins' remark here, does not constitute an assertion of a right to counsel.  *Davis v. United States*, 512 U.S. 452, 459 (1994) (suspect's statement, "Maybe I should talk to a lawyer," was not a request for counsel and law enforcement did not need to cease questioning him).

Regardless, this exchange occurred on March 6th or 7th.  Doc. 10-4, pp. 125, 250.  On March 14, after meeting with Ginn, Driggins notified the police that he wished to make a statement; Driggins did make a statement; and, prior to making his statement, Driggins waived his right to an attorney, both orally and in writing.  *See* Doc. 10-4, pp. 172-175.  "When a suspect has invoked the right to counsel during custodial interrogation," he or she may not be questioned "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."  *Edwards v. Arizona*, 451 U.S. 477, 484–485 (1981); *Holland v. Rivard*, --- F.3d ---, 2015 WL 5011071, at *13 (6th Cir. Aug. 25, 2015).  Here, Driggins initiated further communication with the police; thus, even if he did assert his right to counsel, he later waived that right prior to making his statement.

For all these reasons, Grounds Two and Six are without merit.

### 3.  Ground Seven fails on the merits

In Ground Seven, Driggins argues that the police unlawfully arrested him, and, therefore,

any statement he made to police could not have been used against him.

The Ohio Court of Appeals addressed this claim in Paragraph 12 of its opinion, quoted

above, and in the following additional paragraphs:

> {¶ 29} We turn to defendant's argument on appeal that his motion to suppress the evidence against him should have been granted because his February 27, 2007 arrest was "illegal and unconstitutional," as he "had committed no offense" at the time.

> {¶ 30} Warrantless searches are presumptively unconstitutional, subject to a limited number of specific exceptions. One exception to the rule requiring warrants is found in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which stands for the proposition that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibl[e] criminal behavior * * *." *Id*. at 22. To warrant a *Terry* investigatory stop, the police "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id*. at 21. The Ohio Supreme Court stated that an investigatory stop "must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

> {¶ 31} In *State v. White*, 8th Dist. No. 93109, 2010–Ohio–521, this court affirmed the trial court's denial of a motion to suppress when the defendant, upon seeing the police, attempted to hide something by throwing it on the ground in a high drug area. *See also State v. Williams*, 8th Dist. No. 63502, 1993 Ohio App. LEXIS 4237, 1993 WL 335445 (Sept. 2, 1993) (police were justified in stopping the defendant, who "dropped the bag [of cocaine] to the ground and ran from the police. He no longer had any expectation of privacy in the bag at that point").

> {¶ 32} In the instant case, defendant testified that he said his name was "Mike" and ran away after being approached by the police officers, because he had a bag of crack-cocaine. Pursuant to R.C. 2925.11(C)(4), possession of cocaine is a felony, which is an arrestable offense.

> {¶ 33} Accordingly, defendant's fourth assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at **2, 5-6.

The Ohio Court of Appeals discussed the relevant United States Supreme Court decision,

*Terry v. Ohio*, and found that, under the circumstances, police had probable cause to stop

Driggins.  Although Driggins asserts that he "had committed no offense," he admitted during his suppression hearing that he had been carrying crack cocaine he intended to sell to others.  Doc. 10-4, p. 232-234.  *See also* R.C. 2925.11(A) ("No person shall knowingly obtain, possess, or use a controlled substance[.]"); R.C. 2925.11(C)(4) ("If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine.").

Ground Seven is without merit.

### 4. Ground Five fails on the merits and a portion is procedurally defaulted

In Ground Five, Driggins argues that double jeopardy principles were violated when he pleaded guilty to the charges against him, allegedly breached the plea agreement, and had to face trial of the same charges.  Doc. 1, pp. 42-43.  He asserts that the trial court did not ask him "personally" whether he understood that his plea could be vacated if he refused to testify against a co-defendant as set forth in his plea agreement.  Doc. 1, p. 42.  He also contends that the record does not specify the name of the individual he was supposed to testify against: "the record states that Mr. Driggins did not know the alleged co-defendant who prosecutors brought to trial, [and] there was no si[gn]ed photo line-up pointing to Dionte Ricks."  Doc. 1, pp. 42-43.

The Ohio Court of Appeals found, as to this claim:

{¶ 46} Specifically, defendant argues that "[t]he court did not inquire of defendant *personally* whether he understood his plea could be vacated if he did not testify or refused to testify. Thus the vacation of the plea and sentence by a different judge at a later date placed defendant twice in jeopardy by his later trial." (Emphasis in original.)

{¶ 47} In *State v. Clark*, 119 Ohio St.3d 239, 2008–Ohio–3748, 893 N.E.2d 462, ¶ 27, the Ohio Supreme Court held the following:

Under [Crim.R. 11(C) ], the trial judge may not accept a plea of guilty or no contest without addressing the defendant personally and (1) "[d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control

sanctions at the sentencing hearing," (2) informing the defendant of the effect of the specific plea and that the court may proceed with judgment and sentencing after accepting it, and ensuring that the defendant understands these facts, and (3) informing the defendant that entering a plea of guilty or no contest waives the constitutional rights to a jury trial, to confrontation, to compulsory process, and to the requirement of proof of guilt beyond a reasonable doubt and determining that the defendant understands that fact. *Id*. at (C)(2)(a) through (c).

{¶ 48} Upon review, we find that the court complied with Crim.R.11(C) in accepting defendant's guilty plea. There is no requirement that the court ask a defendant if he or she understands that the plea could be vacated if breached. Furthermore, the State, in explaining the terms of the plea agreement on the record, stated the following: "And in addition, as part of this plea, your Honor, it's the State's understanding that the Defendant will testify truthfully on behalf of the State of Ohio as a State witness in any proceeding that may be brought involving the potential Co–Defendants."

{¶ 49} Defendant's 21st assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *8.

Driggins' claim that he was not "personally" asked by the trial court whether he understood that his plea could be vacated if he did not testify is without merit because there is no United States Supreme Court precedent directing that a court ask a defendant whether he or she understands that the plea could be vacated if the defendant breaches the agreement.  Driggins does not claim that he did not know his guilty plea could be vacated if he breached the agreement; he only argues that the trial court did not inform him of this fact.  The Supreme Court requires that "the essence of those promises [made in a plea agreement] must in some way be made known" to the defendant.  *Santobello v. New York*, 404 U.S. 257, 261-262 (1971).  In Driggins' case, the state described the plea agreement on the record, explaining that Driggins agreed to testify truthfully on behalf of the state as a witness in any proceeding that may be brought involving potential co-defendants and that the failure to do so would result in the state seeking to vacate the agreement.  *See* Doc. 10-4, pp. 10-12.  Thus, the Ohio Court of Appeals'

decision rejecting Driggins' claim was not contrary to nor an unreasonable application of United States Supreme Court precedent.  *See* 28 U.S.C. § 2254(d); *Santobello*, 404 U.S. at 261-262.

Driggins' argument that the name "Dionte Ricks" needed to appear in the record as an individual he agreed to testify against is also not well-taken.  First, he cites no legal authority requiring that a potential co-defendant be named and that, without being named, the essence of the promises made in the plea agreement are not known.  *See Santobello*, 404 U.S. at 261-262; *Ricketts v. Adamson*, 483 U.S. 1, 9 (1987) (upholding a plea agreement that the defendant "promise to testify against 'any and all parties involved in the murder of Don Bolles' and in certain specified other crimes"; the agreement obligated defendant to testify).  Moreover, this argument was not presented to the state courts and is, therefore, procedurally defaulted.  *See Williams*, 460 F.3d at 806 (a claim is procedurally defaulted when the petitioner failed to present "both the legal and factual basis for his or her claim" to the state courts).

In his Traverse, Driggins argues, for the first time, that he "never breached the plea agreement" because he could not testify truthfully.  Doc. 13, p. 13.  He states that the "Dionte" that he mentioned in his confession is not the same as the "Dionte Ricks" that the state wanted him to testify against.  Doc. 13, p. 13.  First, a court is not required to address a theory of relief asserted only in a traverse but not in the habeas petition.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).  Second, this claim is also procedurally defaulted because Driggins did not present it to the state courts.  *See Williams*, 460 F.3d at 806.  Finally, although Driggins explains in his Traverse why he did not testify, he does not contest that he did not in fact testify, thereby plainly breaching the plea agreement.  *See* Doc. 10-4, pp. 48-49 (hearing on motion to vacate plea wherein the prosecutor explained that she was informed that Driggins "indicated he was not testifying, that he had been tricked by the police, as well as his lawyers, and things of that

nature.").  During the trial court's hearing on the state's motion to vacate plea, Driggins' counsel

stated:

> Your Honor, on behalf of Mr. Driggins, he does not desire for us to make an argument
> that he's somehow complied with that condition. He appreciates that we could not in good
> faith make such an argument. It is certainly our hope that perhaps the government might
> just forgo that condition of the plea agreement. We appreciate that they have, in fact, filed
> this motion, and we understand that certainly he has violated one of the conditions of the
> plea agreement. So that we don't ask the Court to rule against the motion, because we just
> couldn't in good faith.

Doc. 10-4, pp. 50-51.  Thus, regardless of his reasons stated now, Driggins did not comply nor

attempt to comply with the plea agreement.  His failure to do so and his subsequent prosecution

as a result of his failure does not violate double jeopardy principles.  See *Ricketts*, 483 U.S. at 8

(a defendant's breach of the plea agreement removes the double jeopardy bar to re-prosecution of

him on the initial charges).

### D.  During Trial

#### 1.  Ground Four fails on the merits

In Ground Four, Driggins argues that his trial counsel was ineffective because he failed to

object to the lack of a jury instruction on the issue of "accident" and because he did not file a

motion to suppress "that the statement as being in violation of Mr. Driggins' right to counsel."

Doc. 1, p. 42.[5]

The Ohio Court of Appeals found,

> {¶ 125} To substantiate a claim of ineffective assistance of counsel, a defendant must
> demonstrate that (1) the performance of defense counsel was seriously flawed and
> deficient, and (2) the result of defendant's trial or legal proceeding would have been
> different had defense counsel provided proper representation. *Strickland v. Washington*,
> 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 25 Ohio St.3d
> 144, 495 N.E.2d 407 (1986). In *State v. Bradley*, the Ohio Supreme Court truncated this
> standard, holding that reviewing courts need not examine counsel's performance if the
> defendant fails to prove the second prong of prejudicial effect. *State v. Bradley*, 42 Ohio
> St.3d 136, 538 N.E.2d 373 (1989). "The object of an ineffectiveness claim is not to grade
> counsel's performance." *Id*. at 143, 538 N.E.2d 373.

---

[5]  Driggins does not specify what "statement" he is referring to.

{¶ 126} Specifically, defendant argues that counsel was ineffective for the following reasons: failure to request jury instructions on accidental shooting; failure to move to suppress his March 14, 2007 statement to police; and failure "to object to various flawed jury instructions which did not include essential elements of the offense."

{¶ 127} Upon review, we find that there was no evidence presented at trial that the shooting was accidental. Therefore, a jury instruction on an accidental shooting was not warranted. Additionally, defendant's motion to suppress included his March 14, 2007 statement to police. Finally, we concluded in defendant's eighth, ninth, tenth, 11th, and 12th assignments of error that the court properly instructed the jury. Accordingly, defendant's 22nd and final assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *20-21.

Although Driggins states, "the evidence presented by the prosecution showed that this was an[] accidental shooting," he identifies no evidence in support of his assertion.  Respondent identifies evidence that supports the conclusion that the shooting was not an accident—Detective Sandoval's trial testimony that Driggins told him that the victim grabbed Driggins' arm; Driggins "got scared and had to shoot him"; Sandoval asked Driggins whether the gun was accidentally discharged and Driggins answered "no, that he pulled the trigger and he shot"; and Sandoval's conclusion, "it was not an accidental shooting."  Doc. 10, p. 33 (citing Doc. 10-12, pp. 189, 192 (Detective Sandoval's trial testimony).  Respondent also states, "any assertion of 'accident' must come from Driggins" and points out that Driggins did not testify.  Doc. 10, p. 33; Doc. 10-12, pp. 227-228 (trial transcript wherein Driggins declines to testify).  The undersigned agrees with Respondents' summary that "a 'robbery gone bad' is not an 'accident' at law."  Doc. 10, p. 33.  *See, e.g.,* Volume 2, Ohio Jury Instructions, 421.01; Accident ("An accidental result is one that occurs unintentionally and without any design or purpose to bring it about.  An accident is a mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act.").  The Ohio Court of Appeals properly applied *Strickland* to Driggins' claim and Driggins cannot show that the state

court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

With respect to Driggins' assertion that his trial counsel failed to file a motion to suppress "the statement," the Ohio Court of Appeals correctly found this claim to be without merit because counsel did move to suppress Driggins' statement made on March 14, 2007.[6] *See also* Doc. 10-2, p. 31 (Driggins' motion to suppress oral and written statements he made on or about March 5, 2007, and March 14, 2007, filed by trial counsel); Doc. 10-4, pp. 55-312 (transcript of trial court suppression hearing covering statements made on March 5th and March 14th). To the extent Driggins contends that counsel was ineffective for failing to argue that his Sixth Amendment rights were violated because he was questioned by police about Rankin's murder without the presence of the attorney assigned to him in his drug case, such an argument would have been baseless, as discussed in the section regarding Ground Six, *supra*. *See Cobb*, 532 U.S. 168, 173-174) (Sixth Amendment right to counsel is offense specific).

Ground Four fails on the merits.

## 2. Ground Eight fails on the merits

In Ground Eight, Driggins argues that he was "denied his constitutional right to a public trial" because the trial court "arbitrarily close[d] the courtroom during portions of the evidence." Doc. 1, p. 44.

The Ohio Court of Appeals considered this claim:

{¶ 51} Specifically, defendant argues that the court erred when it "excluded the public from the courtroom" after "unknown individuals were harassing or bothering potential state witnesses."

---

[6] In his brief in support of his direct appeal, Driggins only argued trial counsel was ineffective for "not seeking to suppress defendant's March 14, 2007 statement." Doc. 10-2, p. 128-129.

{¶ 52} "The right to a public trial is a fundamental constitutional guarantee under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution." *State v. Drummond*, 111 Ohio St.3d 14, 2006–Ohio–5084, 854 N.E.2d 1038, ¶ 49. However, this right is not absolute, and a trial judge has the authority and discretion to control courtroom proceedings. *Id*. at ¶ 51, 854 N.E.2d 1038. We review a trial court's removal of a person from the courtroom under an abuse of discretion standard. *State v. Brown*, 8th Dist. No. 73060, 1998 Ohio App. LEXIS 5589, 1998 WL 827566 (Nov. 25, 1998).

{¶ 53} In *Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the United States Supreme Court set forth a four-part test to determine whether courtroom closure is necessary:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

{¶ 54} Our review of the transcript in the instant case shows that during trial, the court removed four individuals who were seated in the back of the courtroom after the prosecutor overheard them intimidating Terrell Dillard, who testified for the State. The court stated that it "cannot have witnesses intimidated as they are presented to come up to testify," and that the "defendant's rights are too important * * * at this time for there to be any disruption in the courtroom." The court further stated that it was "closing the courtroom to you [four people] and just to you."

{¶ 55} We find that the court acted within its discretion when it removed from the courtroom four individuals who were intimidating a witness. Defendant's fifth assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *8-9.

The trial court closed the courtroom to four people who were involved in an altercation outside the courtroom door with witness Terrell Dillard, his sister, and his mother, also a state witness. *See* Doc. 10-11, p. 56. It did not close the courtroom to the public, as Driggins asserts. Doc. 1, p. 44. The prosecutor in Driggins' case testified that, while in the courtroom, she heard "a ruckus" outside and the words "snitch" and "you need to mind your business." Doc. 10-10, pp. 223-224. When the prosecutor went outside she observed four men "involved in a verbal confrontation with Mr. Dillard's sister" and his mother "standing there with her head down about in tears." Doc. 10-10, p. 227. Driggins does not argue that the Ohio Court of Appeals

34

misapplied *Waller v. Georgia*, 467 U.S. 39 (1984) in determining that the trial court did not err when it closed the courtroom to the four individuals who were intimidating witnesses. *See* 28 U.S.C. § 2254(d). Ground Eight fails on the merits.

### 3. Ground Nine fails on the merits

In Ground Nine, Driggins argues that he was denied a fair trial because the trial court allowed evidence of other bad acts without giving a limiting instruction to the jury. Doc. 1, p. 44. Specifically, he objects to the prosecutor's opening statements and Terrell Dillard's testimony recounting that Driggins was involved in an unrelated burglary wherein he stole $80,000 from a heating vent in a home. Doc. 1, p. 44.

Considering this claim, the Ohio Court of Appeals found,

{¶ 57} Specifically, defendant argues that it was error for the court to allow evidence of a prior "unrelated" burglary of a house located near Rankin's, during which defendant stole approximately $80,000 hidden in a heating vent. Defendant also argues that it was error for the court to allow evidence of his "irrelevant" March 5, 2007 arrest for drugs.

{¶ 58} Generally, evidence of other crimes committed by a defendant is inadmissible to prove that the defendant committed the offense in question. However, R.C. 2945.59 states that "[i]n any criminal case in which the defendant's motive * * *, intent, * * * absence of mistake or accident * * *, scheme, plan, or system in doing an act is material," other acts that tend to prove these things are admissible into evidence. Additionally, Evid.R. 404(B) states that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 59} We review the admission of evidence under an abuse of discretion standard. *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Additionally, the Ohio Supreme Court has held that "R.C. 2945.59 and Evid.R. 404(B) codify the common law with respect to evidence of other acts of wrongdoing, and are construed against admissibility." *State v. Lowe*, 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994).

{¶ 60} In the instant case, the State argues that Dillard's testimony about defendant's prior burglary is admissible to show defendant's motive, plan, knowledge, and intent regarding the burglary at Rankin's house.

{¶ 61} According to Dillard, defendant originally told his friends he needed to stop at a house to look at a car that was for sale. When defendant got back into the car with Dillard, defendant said that "it got a little ugly inside of the house and he had to pop somebody." Dillard testified that defendant "told me that he had went in, and I guess it was some type of job he had did before or whatnot, and he was looking for some money, obviously, or whatever. It wasn't about a car anymore." According to Dillard, defendant was looking for money in the heating vent of Rankin's house.

{¶ 62} Dillard also testified that approximately one year earlier defendant "climbed through somebody's window or something while they were on vacation and searched the house and found some money in a vent."

{¶ 63} This evidence is corroborated by defendant's March 14, 2007 written statement, in which he describes in detail a robbery he and two men committed in March 2006 at 12608 St. John Ave. in Cleveland. According to defendant's confession the two men were tipped off that the owners of the house kept a large amount of cash "in a blue bag wrapped in aluminum foil" hidden in the "floor vent in a bedroom." The men entered the house through a back window and stole approximately $92,000.

{¶ 64} In this same written statement, defendant told the police that on February 27, 2007, he went to Rankin's house, which is located at 12716 St. John Ave., under the guise of inquiring about a car for sale. With gun in hand, defendant asked Rankin where the money was. A struggle ensued, and defendant pulled the trigger, shooting Rankin. Defendant asked Rankin again where the money was, and Rankin replied that he had money in his wallet. Defendant said, "I have been here before and I got 80 Thousand." Defendant searched the bedroom vents but found nothing.

{¶ 65} One of the factors used to determine admissibility of other acts evidence is whether

> a connection, in the mind of the defendant, must have existed between the offense in question and the other acts of a similar nature. * * * The other acts of the defendant must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question. The evidence is then admissible to the extent it may be relevant in showing the defendant acted in the absence of mistake or accident.

*State v. Burson*, 38 Ohio St.2d 157, 159, 311 N.E.2d 526 (1974). *See also State v. Sandifer*, 8th Dist. No. 60761, 1992 Ohio App. LEXIS 2853, 1992 WL 125232 (June 4, 1992) (evidence "that appellant had previously attempted to take money from an individual during a routine traffic stop * * * tended to show a scheme or plan which was relevant to the crime charged").

{¶ 66} Accordingly, it was not error for the court to allow evidence that tended to show defendant robbed Rankin's house because he thought it was the same house he robbed on a prior occasion. Defendant's sixth assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *9-11.

Driggins has not identified Supreme Court precedent holding that evidence of a defendant's other bad act properly admitted under the applicable rules of evidence violates the defendant's due process rights and the undersigned is not aware of such a case. *See Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007) ("Bey has not presented, nor have we discovered, any Supreme Court precedent indicating that a state court violates a criminal defendant's due process rights when it properly admits evidence of the defendant's other bad acts."); *Dowling v. United States*, 493 U.S. 342, 252-253 (1990) (rejecting a defendant's argument that evidence of other bad acts violated his due process rights, stating, "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate 'fundamental fairness' very narrowly."). Here, the Ohio Court of Appeals reasonably found that the trial court properly admitted evidence of Driggins' other bad act pursuant to the Ohio Rules of Evidence because the evidence was admitted to show that Driggins chose Rankin's house because he thought it was the same house he successfully robbed on a prior occasion. This determination was not contrary to nor did it unreasonably apply Supreme Court precedent. Ground Nine, therefore, fails on the merits.

### 4. Ground Ten fails on the merits

Driggins' legal argument in Ground Ten is the same as in Ground Nine, but here he challenges the trial court's ruling permitting evidence regarding Driggins' arrest for drugs on March 5, 2007. Doc. 1, p. 45. Driggins argues that he "was never prosecuted for drugs," the

jury did not need to know why he was initially arrested, and that the offense was unrelated. Doc. 1, p. 45.

The Ohio Court of Appeals continued its discussion of Driggins' claim regarding the admissibility of other acts:

{¶ 67} Turning to defendant's March 5, 2007 arrest, the court found the following evidence admissible: "that [defendant] was approached, that he gave incorrect identifying information, that he threw something down, that he was arrested for violation of State drug law * * *." The court found that the evidence was relevant because it explained to the jury how defendant was in police custody when he made a statement about the homicide. Further the court found that the evidence was not "overwhelmingly prejudicial, when [defendant] himself admits to having the drugs and throwing them."

{¶ 68} During trial, defendant offered to stipulate that he was arrested. However, the court found that this was "not a classic case of other acts. * * * And it is not like part of a completely separate chain of events. From my perspective, it is evidence, it shows a continuum of how this began, how [defendant] was taken into custody.* * * [T]he circumstances of his arrest are absolutely part of how this case even began."

{¶ 69} The court further found that

the State of Ohio is entitled to show and explain to this jury why the defendant was arrested, because if they are not able to do that, then there is a gaping hole in which you could argue that the State singled out this man for questioning and that they abused their power in this particular case. I believe that the fact that the defendant was arrested and gave a false name, and he was arrested validly and with probable cause, is something that the jury is entitled to understand.

{¶ 70} The court gave a limiting instruction to the jury when Det. Morgan testified about defendant's arrest:

The evidence of the defendant's arrest is to show you why the officers acted in the way they did. It is not to be considered for any other purpose. * * * It is only to show you why the officers and why the detectives acted in the way that they did.

{¶ 71} Upon review, we find that, while defendant's lawful arrest is certainly relevant to the case at hand, the events leading up to that arrest are inadmissible other acts evidence. In light of defendant's proposed stipulation to his arrest, testimony that he violated drug laws should have been kept out. However, the evidence supporting defendant's convictions is overwhelming. Specifically, defendant's confession to shooting Rankin during a "robbery gone bad" was properly admitted into evidence. Therefore, we find any error associated with the improperly admitted drug evidence harmless. As such, defendant's seventh assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *11-12.

"[W]hen a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Fry v. Pliler*, 551 U.S. 112, 119 (2007) (emphasis in original).  A constitutional error is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Here, Driggins cannot show that evidence regarding his initial arrest for drugs had a substantial and injurious effect on the jury's verdict, especially in light of the trial court's limiting jury instruction and the overwhelming evidence supporting Driggins' convictions, including the fact that Driggins confessed to shooting Rankin "during a 'robbery gone bad.'" *Driggins*, 2012 WL 5552937, at *12.  Ground Ten, therefore, fails on the merits.

### 5.  Ground Eleven fails on the merits

In Ground Eleven, Driggins argues that the trial court failed to give an accomplice instruction concerning the testimony of his "accomplice," Terrell Dillard, who drove Driggins to and from Rankin's home.  Doc. 1, p. 45.

Regarding this claim, the Ohio Court of Appeals found,

{¶ 73} With respect to jury instructions, a trial court is required to provide the jury a plain, distinct, and unambiguous statement of the law applicable to the evidence presented by the parties to the trier of fact. *Marshall v. Gibson*, 19 Ohio St.3d 10, 12, 482 N.E.2d 583 (1985). "However, the trial court need not give the defendant's requested instructions verbatim but may use its own language to communicate the same legal principles to the jury." *State v. Group*, 98 Ohio St.3d 248, 2002–Ohio–7247, 781 N.E.2d 980, ¶ 108. We review the refusal to give a jury instruction for an abuse of discretion. *Baker v. Cleveland*, 8th Dist. No. 93952, 2010–Ohio–5588, ¶ 28.

{¶ 74} Defendant first argues that it was error for the court not to give the jury "the mandated accomplice instruction" under R.C. 2923.01(H)(2) regarding Dillard's testimony. R.C. 2923.01 governs the offense of conspiracy. Defendant was not charged

with, nor was he convicted of, conspiracy; therefore, this statute is irrelevant to the case at hand.

{¶ 75} R.C. 2923.03 governs the offense of complicity, and subsection (D) states that the court shall include an accomplice jury instruction "[i]f an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of * * * an offense * * *." In the instant case, defendant was not charged with, nor was he convicted of, complicity. Further, there was no allegation that Dillard was defendant's accomplice. *See State v. Fink*, 12th Dist. No. CA92–01–001, 1992 Ohio App. LEXIS 6453, 1992 WL 379358 (Dec. 21, 1992) ("because McNeal and McLaughlin were not appellant's co-conspirators or accomplices, and because public policy does not mandate a cautionary jury instruction in the typical unilateral conspiracy, we find that the instruction contained in R.C. 2923.01(H)(2) was not required in this case").

{¶ 76} Accordingly, as no evidence of conspiracy or complicity was presented to the jury, the court was not required to instruct on either theory of law. Defendant's eighth assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *12-13.

As the Sixth Circuit explained,

Because "federal habeas corpus relief does not lie for errors of state law," we may grant the writ based on errors in state jury instructions only in extraordinary cases. *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). "The question in [ ] a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' *Cupp v. Naughten*, 414 U.S. at 147, 94 S.Ct. 396, not merely whether 'the instruction is undesirable, erroneous, or even universally condemned,' *id.* at 146, 94 S.Ct. 396." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

*Daniels v. Lafler*, 501 F.3d 735, 741-742 (6th Cir. 2007).

Here, Driggins does not show that his is an extraordinary case. As the state Court of Appeals observed, Driggins did not allege that Dillard was an accomplice and Dillard's testimony did not indicate that he was an accomplice. *See* Doc. 10-11, pp. 78-90 (Dillard's testimony wherein he stated that he drove Driggins to Rankin's home because Driggins was going to buy a car) Moreover, even if Dillard was an accomplice, the lack of an accomplice instruction did not "infect[] the entire trial [such] that the resulting conviction violates due process" because the evidence was uncontested that Driggins shot Rankin. *Daniels*, 501 F.3d at

741 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Accordingly, Ground Eleven fails on the merits.

### 6. Grounds Twelve and Fifteen fail on the merits

In Ground Twelve, Driggins argues that the trial court failed to instruct the jury on all elements of murder under "R.C. 2903.02(b)" because the instructions lacked a finding of a "culpable mental state of at least 'reckless.'" Doc. 1, p. 45. In Ground Fifteen, Driggins argues that his due process rights were violated when he was convicted on an offense for which there is no culpable mental state. Doc. 1, p. 47.

Regarding these claims, the Ohio Court of Appeals stated,

{¶ 77} Defendant next argues that the jury instructions for the lesser included offense of felony murder in violation of R.C. 2903.02(B) failed to include the culpable mental state of recklessness.

> R.C. 2903.02(B), the felony-murder statute, does not contain a mens rea component. *See State v. Miller*, 96 Ohio St.3d 384, 2002–Ohio–4931, 775 N.E.2d 498, ¶ 31–33 (defendant may be found guilty of felony murder even if there was no intent to cause the victim's death). Rather, a person commits felony murder pursuant to R.C. 2903.02(B) by proximately causing another's death while possessing the mens rea element set forth in the underlying felony offense. In other words, the predicate offense contains the mens rea element for felony murder. *See State v. Sandoval*, 9th Dist. No. 07CA009276, 2008–Ohio–4402, ¶ 21.

*State v. Fry*, 125 Ohio St.3d 163, 2010–Ohio–1017, 926 N.E.2d 1239, ¶ 43.

{¶ 78} In the instant case, regarding aggravated burglary in violation of R.C. 2911.11(A)(1), the court instructed the jury that it must find that defendant "did by force, stealth or deception trespass in an occupied structure * * * with the purpose to commit therein any criminal offense, and inflicted * * * physical harm on Glenn Rankin." In *Fry*, the Ohio Supreme Court determined that the culpable mental state for aggravated burglary, which is "purposeful," served as a proper predicate offense mens rea for felony murder. *Fry* at ¶ 44.

{¶ 79} Given that, in the case at hand, the court's jury instruction for aggravated burglary was proper, defendant's ninth and 12th assignments of error are overruled.

*Driggins*, 2012 WL 5552937, at *13.

Driggins does not assert that the Ohio Court of Appeals' decision was contrary to or unreasonably applied Supreme Court precedent, and legal authority indicates otherwise.  *See Hopkins v. Reeves*, 524 U.S. 88 (1998) (the United States Constitution does not require states to include a *mens rea* element for felony murder if a *mens rea* requirement is satisfied in the commission of the underlying offense); *Cherry v. Hudson*, 2007 WL 781318, at **5, 15 (N.D.Ohio March 12, 2007).

Grounds Twelve and Fifteen are without merit.

**7.  Ground Thirteen fails on the merits**

In Ground Thirteen, Driggins argues that the trial court erred by giving the following instruction to the jury: "There may be one or more causes of an event; however, if the defendants act or failure to act was one cause, then the existence of another cause is n[o]t a defense."  Doc. 1, p. 46.  He contends that this instruction caused him to be convicted of intentional murder as a result of an intervening act of another.  Doc. 1, p. 46.

The Ohio Court of Appeals considered this claim:

{¶ 80} Defendant next argues that the court instructed the jury improperly regarding the definition of "cause" under the lesser included offense of murder in violation of R.C. 2903.02(A), which states as follows: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *."

{¶ 81} In the instant case, the court gave the following jury instruction regarding the definition of the word "cause":

Cause is an ability or failure to act which, in a natural and continuous sequence, directly produces death to Glenn Rankin and without which it would not have occurred.

The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act, ladies and gentlemen. The defendant is also responsible for the natural and foreseeable consequences or the results that follow in the ordinary course of events from the act or failure to act.

There may be one or more causes of an event; however, if the defendant's act or failure to act was one cause, then the existence of another cause is not a defense.

The defendant is responsible for the natural consequences of the defendant's unlawful act or failure to act even though the death to Glenn Rankin was also caused by an intervening act, for example, or failure to act of another person or agency.

{¶ 82} Defendant argues that, according to this jury instruction, he "could be convicted even if the jury determined that the act was caused by another person." In *State v. Hanna*, 95 Ohio St.3d 285, 2002–Ohio–2221, 767 N.E.2d 678, ¶ 50, the Ohio Supreme Court concluded that 4 Ohio Jury Instructions, Section 409.56, which defines "intervening causes" was an adequate jury instruction. That jury instruction reads: "Intervening causes. The defendant is responsible for the natural consequences of the defendant's unlawful act, even though death was also caused by the intervening act of another person or agency." *Hanna* at ¶ 47.

{¶ 83} The jury instruction at issue substantively mirrors the jury instruction approved in *Hanna*. Defendant's tenth assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *13-14.

Driggins does not identify what alleged intervening act of another caused Rankin's death. Indeed, the evidence presented included Driggins' confession that he shot Rankin and that the gunshot wound caused Rankin's death. *See, e.g.*, Doc. 10-11, p. 33 (coroner testifying that the cause of Rankin's death was a "gunshot wound trunk with vascular and soft tissue injuries."); *Daniels*, 501 F.3d at 741 (habeas petitioner must show that the alleged bad instruction alone "so infected the entire trial that the resulting conviction violates due process."). Ground Thirteen fails on the merits.

### 8. Ground Fourteen fails on the merits

In Ground Fourteen, Driggins argues that the trial court's jury instructions failed to include all the elements of murder under "R.C. 2903.02(b)" because the instructions did not require the jury to unanimously agree on which underlying offense Drggins committed— aggravated robbery or aggravated burglary. Doc. 1, p. 46.

The Ohio Court of Appeals reasoned,

{¶ 84} Defendant next argues that the jury instruction for the lesser included offense of felony murder in violation of R.C. 2903.02(B) failed to include that the jury had to unanimously agree on which set of facts defendant's guilty verdict was based, i.e., whether the predicate offense was aggravated robbery or aggravated burglary.

{¶ 85} In *State v. Davis*, 76 Ohio St.3d 107, 118–119, 666 N.E.2d 1099 (1996), the Ohio Supreme Court held that "[b]ecause the jury made a separate, unanimous finding of guilt as to each of the predicate felonies" of kidnapping and aggravated robbery, it was not plain error for the felony-murder instructions to omit an additional unanimous determination of which underlying felony had been committed.

{¶ 86} In following *Davis*, we find no error in the court's jury instruction, and defendant's 11th assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *14.

Given that the jury found Driggins guilty of both aggravated robbery and aggravated burglary, it cannot be said that the failure of the trial court to instruct the jury that they had to unanimously agree on which was the predicate offense so infected the entire trial that Driggins' resulting conviction violates due process. *See Daniels*, 501 F.3d at 741. Ground Fourteen fails on the merits.

### 9. Ground Sixteen fails on the merits

In Ground Sixteen, Driggins argues that the trial court erred when it instructed the jury on murder as a lesser included offense of aggravated murder. Doc. 1, p. 47.

The Ohio Court of Appeals considered this claim:

{¶ 87} In *State v. Reed*, 65 Ohio St.2d 117, 124, 418 N.E.2d 1359 (1981), the Ohio Supreme Court held that murder is a lesser included offense of aggravated murder. Defendant's 13th assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *14.

"A state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Accordingly, the Ohio Supreme Court's determination that murder is a lesser included offense of aggravated murder is not reviewable in federal habeas review. Driggins' claim, which incorrectly states Ohio law, fails.

### 10. Ground Eighteen fails on the merits

In Ground Eighteen, Driggins argues that the trial court erred because it failed to include

an instruction on the lesser included offenses of involuntary manslaughter and/or negligent

homicide.  Doc. 1, p. 49.

With respect to this claim, the Ohio Court of Appeals found,

{¶ 88} Specifically, defendant argues that it was error for the court to not instruct the jury on negligent homicide and involuntary manslaughter as lesser included offenses of aggravated murder.

> [I]n determining whether an offense is a lesser included offense of another, a court shall consider whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed.

*State v. Evans*, 122 Ohio St.3d 381, 2009–Ohio–2974, 911 N.E.2d 889, ¶ 26, clarifying *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988).

{¶ 89} Negligent homicide is not a lesser included offense of aggravated murder. *State v. Johnson*, 8th Dist. No. 53732, 1988 Ohio App. LEXIS 1864, 1988 WL 47413 (May 12, 1988). On the other hand, "[i]nvoluntary manslaughter is always and necessarily a lesser included offense of murder because murder cannot ever be committed without also committing or attempting to commit a felony or a misdemeanor." *State v. Kidder*, 32 Ohio St.3d 279, 282, 513 N.E.2d 311 (1987).

{¶ 90} R.C. 2903.04(A) defines involuntary manslaughter as follows: "No person shall cause the death of another * * * as a proximate result of the offender's committing * * * a felony." The culpable mental state for involuntary manslaughter is the culpable mental state for the underlying felony. *State v. Ziko*, 71 Ohio App.3d 832, 535 N.E.2d 1019 (8th Dist.1991).

{¶ 91} Defendant was convicted of one count of murder in violation of R.C. 2903.02(A), which states that "[n]o person shall purposely cause the death of another * * * " and one count of murder in violation of R.C. 2903.02(B), which states that "[n]o person shall cause the death of another as a proximate result of the offender's committing * * * an offense of violence that is a felony of the first or second degree * * *."

{¶ 92} Even though involuntary manslaughter is a lesser included offense of murder in the abstract, "a charge on the lesser included offense is warranted only if the evidence adduced at trial would support it." *State v. Thomas*, 40 Ohio St.3d 213, 216, 533 N.E.2d 286 (1988).

{¶ 93} In *State v. Clark*, 8th Dist. No. 89371, 2008–Ohio–1404, ¶ 42, this court held that a jury instruction on involuntary manslaughter was not warranted, because "the evidence presented at trial [did] not reasonably support an acquittal on the charges for aggravated murder [as] the evidence established that Clark acted purposely when he shot and killed [the victim]."

{¶ 94} In his March 14, 2007 statement to the police, defendant said that when Rankin attempted to grab the gun away from defendant during the robbery, defendant "pulled the trigger to get him to let go of my hand." In *State v. Mackey*, 8th Dist. No. 75300, 1999 Ohio App. LEXIS 5902, 1999 WL 1129589 (Dec. 9, 1999), this court held that a "jury can infer intent to kill by the defendant's use of a firearm, an inherently dangerous instrumentality, the use of which is likely to produce death." (Citing *State v. Widner*, 69 Ohio St.2d 267, 431 N.E.2d 1025 (1982).)

{¶ 95} Because the evidence at trial—namely that defendant purposefully fired the gun—supports a murder conviction under both R.C. 2903.02(A) and (B), we find no error in the court's refusing to instruct the jury on involuntary manslaughter. Additionally, an instruction on negligent homicide was improper as a matter of law. Accordingly, defendant's 14th assignment of error is overruled.

*Driggins*, 2012 WL 5552937, at *14-15.

The state Court of Appeals' finding that negligent homicide is not a lesser included offense of aggravated murder is not reviewable in a federal habeas court for the reasons described in Ground Sixteen.  *See Richey*, 546 U.S. at 76.

Driggins has not demonstrated that the state Court of Appeals' determination that he was not entitled to a jury instruction on the lesser included offense of involuntary manslaughter was contrary to or an unreasonable application of Supreme Court precedent.  Case law indicates that the state court's decision survives AEDPA deference.  *See Beck v. Alabama*, 447 U.S. 625, 635 (1980) (in a capital case, due process requires an instruction on a lesser included offense "if the evidence would permit a jury rationally to find [defendant] guilty of the lesser offense and acquit him of the greater."); *Campbell v. Coyle*, 260 F.3d 531, 540-546 (6th Cir. 2001) (petitioner who entered an apartment intending to burglarize it, encountered the resident, and stabbed and killed him argued that the Ohio trial court should have instructed the jury on the lesser included offense

of involuntary manslaughter; the Sixth Circuit found that the state court did not unreasonably apply *Beck* in finding that the petitioner "was not constitutionally entitled to a lesser-included instruction because the evidence did not support a verdict on the lesser charge, nor was there sufficient evidence to support a rational jury's conclusion that he should have been acquitted of the greater offense.").  Here, the Ohio Court of Appeals pointed out that the evidence at trial—Driggins purposefully fired the gun—would not permit a jury to find him guilty of a lesser offense or acquit him of the greater offense.  The state Court of Appeals therefore reasonably applied the principles articulated in *Beck*.

Ground Eighteen fails on the merits.

### E.  After Trial

#### 1.  Grounds Three and Seventeen fail on the merits

In Ground Three, Driggins argues that he was denied his Sixth Amendment rights because the trial court sentenced him to consecutive sentences for aggravated burglary and aggravated robbery, in addition to his 18-year sentence for murder, based on "judicial factfindings that Mr. Driggins had a separate animus as [he] had entered the home in order to commit an aggravated burglary which changed when he encountered the victim."  Doc. 1, p. 42.

In Ground Seventeen, Driggins argues that he was subject to multiple punishments, in violation of R.C. 2941.25 and the Fifth Amendment, because the trial court did not merge his murder, aggravated robbery, and aggravated burglary convictions.  Doc. 1, p. 48.

Regarding these issues, the Ohio Court of Appeals found the following:

{¶ 116} In the instant case, the court sentenced defendant as follows: it merged the two murder convictions and sentenced defendant to life in prison with the possibility of parole after 15 years; it merged the two aggravated robbery convictions and sentenced defendant to ten years in prison; it merged the two aggravated burglary convictions and sentenced defendant to ten years in prison; and it merged all firearm specifications and sentenced defendant to three years in prison. The court ordered all sentences to be served

consecutively for an aggregate prison term of life with the possibility of parole after 38 years.

{¶ 117} Defendant argues that his murder, aggravated robbery, and aggravated burglary convictions are allied offenses subject to merger for sentencing. Defendant also argues that the court erred when it failed to require the State to elect which allied offense to pursue at sentencing in violation of *State v. Whitfield*, 124 Ohio St.3d 319, 324, 2010–Ohio–2, 922 N.E.2d 182.

{¶ 118} Upon review, we find that the State did not elect which of the merged convictions to pursue at sentencing. It is unclear from the record whether the court sentenced defendant on the purposeful murder or the felony murder. Additionally, it is unclear whether the court sentenced defendant on the aggravated robbery in violation of R.C. 2911.01(A)(1) or (A)(3) and the aggravated burglary in violation of R.C. 2911.11(A)(1) or (A)(2).

{¶ 119} However, because the crimes at issue are not allied offenses, we find any resulting error to be harmless.

{¶ 120} In *State v. Johnson*, 88 Ohio St.3d 95, 723 N.E.2d 1054 (2000), the Ohio Supreme Court held that aggravated murder, aggravated robbery, and aggravated burglary were not allied offenses.

> Appellant committed aggravated burglary when he entered the home occupied by Shanon with the intent to commit a crime, carrying a ball bat as a weapon. He committed aggravated robbery when he viciously beat Shanon with the bat and took money from her purse. He committed aggravated murder when he killed Shanon. As a result, the offenses at issue were committed separately and with a separate animus.

*Id*. at 115, 723 N.E.2d 1054.

{¶ 121} Although defendant was convicted of murder and felony murder, rather than aggravated murder, the same reasoning applies to determine that the offenses at issue are not allied and do not merge for the purpose of sentencing. At the August 24, 2009 sentencing hearing, the court found that "defendant went into this home to commit an aggravated burglary, but his intent * * * changed as he encountered the victim and, therefore, * * * both the aggravated robbery and the aggravated burglary are crimes of a separate animus." *See, e.g., State v. Keene*, 81 Ohio St.3d 646, 668, 693 N.E.2d 246 (1998) ("felony-murder under R.C. 2903.01(B) is not an allied offense of similar import to the underlying felony"); *State v. Allen*, 8th Dist. No. 92482, 2010–Ohio–9, ¶ 69 (felony murder and aggravated robbery are not allied offenses because one requires the death of a person and the other does not).

{¶ 122} Accordingly, defendant's 17th and 18th assignments of error are overruled.

*    *    *

{¶ 123} Defendant argues that it was error for the court to sentence him to consecutive prison terms "based on judicial factfinding that defendant had a separate animus as defendant entered the home in order to commit an aggravated burglary which changed when he encountered the victim." Upon review, we find that defendant's sentence was not based on the court's finding that he committed the offenses with a separate animus. Rather, as discussed in our analysis of defendant's 17th assignment of error, the court properly made that finding in relation to the merger of allied offenses.

{¶ 124} Defendant's 19th assignment of error is factually inaccurate and, therefore, overruled.

*Driggins*, 2012 WL 5552937, at *18-20.

Ground Three fails on the merits because, as the Ohio Court of Appeals pointed out, the judicial factfinding regarding separate animus that Driggins complains of was made for purpose of considering whether the aggravated robbery and aggravated burglary crimes were allied offenses subject to merger, which is proper under Ohio law. *See* Doc. 10-13, pp. 83-83 (transcript of trial court sentencing and discussion of merged offenses).

To the extent Driggins complains his sentence was improper based on Ohio sentencing laws and the interpretation of those laws (such as consecutive sentences), such a claim is not cognizable on federal habeas review. *Wilson v. Corcoran*, 562 U.S. 1, 8 (2010) (lower federal court's consideration of Indiana state court's interpretation of Indiana sentencing laws improper on federal habeas review); *Oregon v. Ice*, 555 U.S. 160, 163 (2009) (states may permit trial court judges the discretion to order consecutive sentences after making a factual determination); *see* Doc. 10-13, pp. 72-82 (trial court referencing Ohio sentencing statutes and explaining the factual basis for the sentence imposed).

Ground Seventeen also fails on the merits. The Ohio Court of Appeals' determination that murder, aggravated robbery, and aggravated burglary were not allied offenses subject to merger was not contrary to nor an unreasonable application of Supreme Court precedent. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("where the same act or transaction

constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."); *Brown v. Smith*, 2014 WL 1493123, at *20-23 (N.D.Ohio Apr. 11, 2014) (no double jeopardy violation under *Blockburger* for aggravated robbery and kidnapping because "each offense contains an element not contained in the other."). Aggravated robbery requires the possession or use of a deadly weapon in committing a theft offense (R.C. § 2911.01) and aggravated burglary requires trespass into an occupied structure with the purpose to commit any criminal offense (R.C. § 2911.11). Neither aggravated robbery nor aggravated burglary contains an element that a person be killed. Driggins does not advance any argument to the contrary. His claim is, therefore, without merit.

### 2. A portion of Ground Nineteen fails on the merits and a portion is not cognizable

In Ground Nineteen, Driggins argues that there was insufficient evidence to support the guilty verdicts against him and that his conviction was against the manifest weight of the evidence.

The Ohio Court of Appeals considered these claims:

{¶ 96} Defendant challenges all six of his convictions, claiming that they were not supported by sufficient evidence, and that "the multiple contradictions, outright lies and uncorroborated testimony together with the lack of proof leads one to conclude that the verdicts are against the manifest weight of the evidence."

{¶ 97} Defendant fails to point to any particular element within his convicted offenses or any specific evidence or testimony in the record to support his argument. Nonetheless, we review his convictions and trial in toto.

{¶ 98} Defendant was convicted of one count of murder in violation of R.C. 2903.02(A), which states that "[n]o person shall purposely cause the death of another * * * " and one count of murder in violation of R.C. 2903.02(B), which states that "[n]o person shall cause the death of another as a proximate result of the offender's committing * * * an offense of violence that is a felony of the first or second degree * * *."

{¶ 99} Defendant was also convicted of aggravated robbery in violation of R.C. 2911.01(A)(1) and (3), which state that "No person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon * * * and * * * use it; [or][i]nflict* * * serious physical harm on another."

{¶ 100} Additionally, defendant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1) and (2), which state that "No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts * * * physical harm on another; [or][t]he offender has a deadly weapon * * *."

{¶ 101} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 102} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:

> The appellate court sits as the "thirteenth juror" and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Id.* at 387, 678 N.E.2d 541.

{¶ 103} Determinations of witness credibility are primarily left to the trier of facts. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶ 104} According to the record in the instant case, the following pertinent evidence was presented at trial:

{¶ 105} Dillard testified that on February 28, 2007, he drove defendant and two other men to a house on the west side of Cleveland, because defendant told the group he wanted to look into buying a car from someone. Dillard dropped defendant and one of the men (whom Dillard allegedly did not know) off at this house, then Dillard began to drive away. At the first stop sign, Dillard received a call from the other man, who stated that defendant was "tripping." Dillard went back to the house and picked defendant and the man up. According to Dillard, "the whole demeanor of [defendant] had changed since before he went in."

{¶ 106} When defendant got in Dillard's car, defendant made a phone call. Dillard overheard defendant say "it got a little ugly inside of the house" and defendant "had to pop somebody." Dillard testified that defendant said he went into the house looking for money in the heating vent based on "a job he had did before." Defendant said that he had a gun, the man in the house tried to take it, and "[t]he gun went off and hit [Rankin] in the leg."

{¶ 107} Dillard drove back to the east side of town and stopped at a gas station. Dillard testified that defendant had [a] small wallet and a revolver on him when "he lifted his shirt up." Defendant offered to pay for gas with "a credit card or something that he had got * * *." Defendant's offer was refused, and he threw the contents of the wallet up in the air. Surveillance video from the gas station shows this happening, and various forms of identification, receipts, and scraps of paper belonging to Rankin were recovered from the scene and introduced into evidence.

{¶ 108} David Ali, the owner of the gas station, testified that on February 28, 2007, a group of young men pulled into the gas station, and one of them got out of the car and threw a bunch of papers into the air. One of the other men said, "[D]amn, Stacey, why you do that there?" According to the record, defendant's nickname is "Stacey." Ali later picked the papers up and found "medical cards, Sam's club cards, driver's license, stuff like this" belonging to an older gentleman. Ali called the phone number on one of the cards attempting to give the items back to the owner. Ali never reached anyone at the number. A couple of days later, Ali read an article in the newspaper about a homicide near his gas station. The victim's name was Glen Rankin, which is the same name on the cards he found in his parking lot.

{¶ 109} Ali called the police, told them what he knew, and gave them the gas station's surveillance video. Additionally, Ali told the police that the "kid who tossed that stuff like up in the air" was the same person who was on the cover of Scene magazine regarding the Glenville High School football program. Ali testified that he graduated from Glenville, and he took a particular interest in the neighborhood including this magazine cover story.

{¶ 110} Ginn's testimony at trial was substantially the same as his suppression hearing testimony. Ginn received a phone call in March 2007 from defendant, who was in jail asking for help. The next time Ginn spoke with defendant, defendant stated that he was "tired," and he wanted to do the right thing and make a statement to the police. The only details that Ginn learned from defendant was that there was a "robbery went bad and someone was killed." Ginn was not present when defendant made his statement to the detectives, because Ginn broke down and left the room.

{¶ 111} Det. Morgan testified that he was investigating Rankin's death when he received a phone call from Ali on March 4, 2007. The police went to Ali's gas station, where Ali turned over the contents of Rankin's wallet, the video from the surveillance camera showing defendant throwing the items up into the air, and a copy of the Scene magazine with defendant on the cover. The remainder of Det. Morgan's testimony is consistent with his testimony from the suppression hearing.

52

{¶ 112} In defendant's March 14, 2007 written statement, he confessed that he planned to rob Rankin's house, but when he entered, Rankin "grabbed the gun, and almost had gained possession of it, so I pulled the trigger to get him to let go of my hand. He stumbled back and landed on his butt and ended up flat on his back." Defendant searched the house, but found no money other than what was in Rankin's wallet. Defendant "hit [Rankin] in the forehead with the left side of the pistol. [Rankin] again grabbed my wrist, but this time I was able to yank the gun away from his grasp. * * * I heard [Rankin] complaining that his hip was numb when we were leaving the house."

{¶ 113} In summary, the evidence shows that defendant planned to rob Rankin, then fatally shot Rankin during the robbery. Defendant admitted to intentionally pulling the trigger of the gun. It is long-standing law in Ohio that intent to kill may be inferred when a deadly weapon is used.

> The accepted rule that a person must be held to intend the natural and probable consequences of his act evolved from cases dealing with the use of dangerous weapons and instrumentalities, such as guns, knives, clubs and other lethal objects. A person using such deadly and destructive objects is held, under the law, to intend the natural and probable consequences resulting from the manner in which such objects were used.

*State v. Butler*, 11 Ohio St.2d 23, 34, 227 N.E. 627 (1967). Accordingly, defendant's 15th and 16th assignments of error are overruled.

*Driggins*, 2012 WL 5552937, at *16-18.

### a. Manifest weight of the evidence is not cognizable

Driggins' claim that his conviction is against the manifest weight of the evidence is not cognizable because federal habeas corpus relief is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010). A claim that a conviction is against the manifest weight of the evidence rests solely on state law and is not a cognizable claim in a federal habeas proceeding. *See Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)).

### b. Sufficiency of the evidence fails on the merits

The relevant inquiry when a court reviews a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, (1979) (emphasis in original).  When reviewing a sufficiency of evidence claim on federal habeas review, there is deference at two levels.  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  The first layer of deference goes to the factfinder as required by *Jackson*; the second goes to the state reviewing court as required by AEDPA.  *Id.*; *see also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (when reviewing a sufficiency of the evidence claim, federal habeas courts are "bound by two layers of deference to groups who might view facts differently than we would").

The *Jackson* standard "does not permit a court to make its own subjective determination of guilt or innocence."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (quoting *Jackson*, 443 U.S. at 320, n. 13); *Brown*, 567 F.3d at 205 ("[E]ven though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.").  Thus, in assessing a sufficiency of the evidence claim under *Jackson*, a court does not reweigh evidence, reassess the credibility of witnesses, or substitute its judgment for that of the jury.  *Id.*; *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt."  *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

Even if a habeas court's review of the evidence were to lead the court to conclude that a rational trier of fact could not have found guilt beyond a reasonable doubt, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Here, the Ohio Court of Appeals applied the proper standard when considering Driggins' sufficiency of the evidence claim.  *See Driggins*, 2012 WL 5552937, at *16 ("The relevant inquiry is whether, after viewing the evidence in a light most favorable to the  prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.").  Given all the evidence described by the state Court of Appeals that was presented at trial against Driggins, the state Court of Appeals' decision cannot be said to be unreasonable.  *See Brown*, 567 F.3d at 205.   Driggins makes no argument to the contrary.  His sufficiency of the evidence claim is therefore without merit.

**IV**. **Conclusion and Recommendation**

For the reasons stated above, the undersigned recommends that Petitioner's habeas

petition be **DISMISSED in part** and **DENIED in part** because a portion of Ground Five is

procedurally defaulted, a portion of Ground Nineteen is not cognizable, and the remainder of

Driggins' grounds fail on the merits.


Dated: September 28, 2015

_____
Kathleen B. Burke
United States Magistrate Judge


**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir.
1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).